OPINION OF THE COURT
Joseph R. Glownia, J.
Defendant guarantor Warmus seeks summary judgment dismissing plaintiff creditor Ray Weil Chevrolet, Inc.’s (hereinafter Weil) complaint on the ground that a certain settlement *753 agreement entered into by and between plaintiff and the principal debtors (defendants M&C Investments and Michael C. Howell, hereinafter Howell) was such as to discharge him under well-recognized rules of law governing surety relationships and the authority of Bier Pension Plan Trust v Estate of Schneierson (74 NY2d 312).
The salient facts underlying this litigation may be simply stated.
On November 2, 1987, Howell gave Weil a promissory note in the principal amount of $350,000, at 8% interest per year, payable in 84 monthly payments of $5,456, commencing December 1, 1987 and ending November 1, 1994. On August 16, 1988, as part of other business considerations, Warmus acknowledged in letter form that he was "guaranteeing the * * * note payments” owed by Howell to Weil.
On August 1, 1991, Howell defaulted on the note and Weil obtained a $208,296.23 judgment, dated July 21, 1992, against Howell and a $42,979.07 second judgment, dated May 25, 1993, for attorney’s fees. Subsequently, litigation between Weil and Howell was commenced in the State of Michigan, resulting in the June 24, 1994 settlement agreement previously referred to.
It is this agreement which Warmus now argues resulted in his discharge, requiring this court to grant summary judgment against plaintiff.
Inter alia, the settlement agreement entered into by and between plaintiff and Howell requires Howell to make payments to plaintiff in principal in the amount of $220,000 (with interest at 6% from June 1, 1994 until all amounts due are paid) as follows: $70,000 by June 30, 1994; $30,000 by December 31, 1994; $50,000 by December 31, 1995; and 20 monthly payments of $3,500, beginning February 1, 1996, and ending on September 1, 1997.
Although the legal affect of the settlement agreement at bar is strongly disputed by the parties, what is not in dispute is that Warmus was not a party to the agreement and did not agree or consent to it.
Weil’s complaint against both Howell and Warmus is dated October 14, 1991. It reads, in pertinent part, "[o]n or about November 2, 1987, [Howell] made & delivered its Promissory Note in the principal amount of $350,000.00 to [Well] * * * [o]n or about August 16, 1988 [Warmus] personally guaranteed payments of the Promissory Note * * * [o]n or about Septem *754 her 16, 1991, [Well] declared the entire unpaid balance of principal immediately due and payable * * * [t]here is currently due and owing * * * $190,943.00 with interest thereon from August 1, 1991 * * * and * * * [Warmus is] * * * liable thereon”.
On November 12, 1991, Warmus answered Weil’s complaint raising general denials, with affirmative defenses and counterclaims. Contemporaneously, Weil and Howell were engaged in extensive litigation in the State of Michigan, where Howell resided and on June 24, 1994 they entered into the settlement agreement previously noted. In addition to the payment schedule previously mentioned, the agreement called for the following to occur in New York State: a satisfaction of judgment (the May 25, 1993 $42,979.07 judgment for attorney’s fees) and a partial satisfaction of judgment (the July 21, 1992 $208,296.23 judgment upon the note), both being filed in the Erie County Clerk’s office on September 12, 1994.
On October 12, 1994, Warmus first learned of the Weil/ Howell settlement agreement.
Upon the instant motion, Warmus urges dismissal of plaintiffs October 14, 1991 complaint arguing that "he was discharged as a surety when Ray Weil and Howell entered into the aforementioned Settlement Agreement, which agreement modified the terms of the underlying Note obligation by extending the payment period with respect thereto.” (Emphasis supplied.)
Warmus advances his request from summary judgment relief based upon the rule of law that "[u]nder general contract rules, an obligation may not be altered without the consent of the party who assumed the obligation. Suretyship is a contractual relation and thus the rule is stated that the creditor and the principal debtor may not alter the surety’s undertaking to cover a different obligation without the surety’s consent. If they do so the surety is discharged because the parties have substituted a new contract, to which it never agreed, for the original (Becker v Faber, 280 NY 146, 148-149; see generally, 10 Williston, Contracts § 1211 et seq. [3d ed 1967])” (Bier Pension Plan Trust v Estate of Schneierson, supra, 74 NY2d, at 315).
In urging denial of defendant Warmus’ motion for summary judgment relief, plaintiff argues principally that because the note merged with the judgment taken against Howell in July 1992, the rules of law governing discharge of sureties do not *755 apply. However, plaintiff is unable to cite any authority to support such a position and the court is unable to find any such authority.
In New York, it is a general rule of law that "a surety is discharged if the creditor, without the surety’s consent, enters into an enforceable, unconditional agreement with the principal to extend the latter’s time to pay his debt or to perform his obligation.” (63 NY Jur 2d, Guaranty and Suretyship, § 210, at 289.) "The rule is applicable after, as well as before, a creditor recovers judgment for the debt against the principal or the surety, and may be invoked where there is an agreement to delay execution” (63 NY Jur 2d, Guaranty and Suretyship, § 211, at 291 [emphasis supplied]).
As was stated long ago in Ross v Ferris (18 Hun 210, 211 [1879]), "The agreement to delay execution is a very different matter. It extends the time of payment, which would otherwise be fixed by the judgment. It prevents the sureties, if they should pay the debt, from immediately enforcing the judgment obtained by the creditor, and to which they might be entitled by subrogation.” (Emphasis supplied.)
In the case at bar, the original pay-off date of the debt owed to plaintiff was November 1, 1994. Postjudgment, plaintiff deferred collection proceedings thereon and extended the time for repayment by Howell until September 1, 1997, approximately three years after the original paid in full deadline date. This plaintiff did without surety Warmus’ consent or agreement.
In Congregation Ohavei Shalom v Comyns Bros. (123 AD2d 656-657), it was stated: "A surety’s rights are accorded the jealous protection of the law, and any alteration of the contract to which his guarantee applies, whether material or not, will serve to discharge the surety’s obligation * * * Thus, 'an extension of the time of payment, without the assent of the surety, is such a dealing as operates to discharge the surety, the law presuming injury to the surety from such extension’ (Bank of Albion v Burns, 46 NY 170, 175), since a surety cannot be held to a contract he has not made and because the extension of time typically increases the surety’s risk” (emphasis supplied).
Defendant argues that the common law of the State of New York makes no distinction between an extension agreement that is entered into between a creditor and debtor postjudgment versus prejudgment. Defendant maintains that the *756 linchpin of the discharge of a surety is dependent on whether a new agreement or contract that will be enforced by the courts (extending the time of repayment) is in place of the original and that it does not matter whether or when judgment is entered. In light of the authorities previously cited (63 NY Jur 2d, Guaranty and Suretyship, § 211, at 291; Bier Pension Plan Trust v Estate of Schneierson, supra; Congregation Ohavei Shalom v Comyns Bros., supra) this court agrees.
Hence, in view of the foregoing, this court must conclude that the settlement agreement entered into by and between plaintiff and Howell, which extended the time of repayment of the November 2, 1987 note, without defendant Warmus’ consent, discharged Warmus from any obligations which he may have had thereunder.
Accordingly, summary judgment is granted to defendant Warmus; his application to dismiss the three causes of action of the October 14, 1991 complaint of the plaintiff is granted.
As was previously determined, plaintiffs motion to amend the complaint to add causes of action four and five is granted; all other motions are denied.